IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WAYNE BLAND, on behalf of himself and all others similarly situated, | |
| Plaintiff, | Case No. |
| v. | |
| EDWARD D. JONES & CO., L.P. and THE JONES FINANCIAL COMPANIES, L.L.L.P., | Jury Trial Requested |
| Defendants. | |

## COMPLAINT

Plaintiff Wayne Bland, on behalf of himself and all others similarly situated, by and through his attorneys, Stowell & Friedman, Ltd., hereby files this complaint of race discrimination against Defendants, Edward D. Jones & Co. L.L.P. and The Jones Financial Companies, L.L.L.P. (collectively "Edward Jones," "Defendant," or "the Firm"), and in support states as follows:

1. Edward Jones claims to be a leader in the financial services industry and to serve "nearly 7 million investors from more offices than any other investment firm in America."[1] As of year-end 2017, Edward Jones managed over $1 trillion in client assets and employed over 16,000 registered brokers, called Financial Advisors ("FAs"), to service largely individual investors in more than 13,000 locations across the United States.[2]

---

[1] https://www.edwardjones.com/about/index.html.
[2] The Jones Financial Companies, L.L.L.P., 10-K Report for fiscal year ended December 31, 2017 at 29, 33.

2.  African Americans are under-represented both as FAs[3] and in management at Edwards Jones, and are paid substantially less than their counterparts who are not African American. These disparities result from Edward Jones's systemic, intentional race discrimination and from policies and practices that serve no reasonable business purpose yet have a disparate impact on African Americans.

3.  Plaintiff, and the class he seeks to represent, alleges that Edward Jones employs company-wide policies and practices regarding training, compensation, partnerships, and the assignment of territories, business opportunities and sales support that unlawfully segregate its workforce and deny African Americans the income and advancement opportunities because of their race.

4.  Plaintiff has filed this lawsuit to hold Edward Jones accountable for its unlawful treatment of African Americans and to achieve meaningful reform. This lawsuit is brought by Plaintiff on behalf of himself and other African American FAs who work or worked for the Firm and have been harmed by its company-wide pattern or practice of race discrimination and discriminatory policies and practices. This action seeks class-wide injunctive relief and an end to Edward Jones's discriminatory practices.

## JURISDICTION AND VENUE

5.  Plaintiff's claims arise under 42 U.S.C. § 1981.[4] This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

6.  Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b). Defendant is licensed to do business and maintains a number of branch offices in this

---

[3] As used herein, Financial Advisors include and refer to both tenured and trainee FAs.
[4] Plaintiff intends to amend this Complaint to add individual and class claims of disparate impact and disparate treatment discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq,*. after he has exhausted his administrative filing requirements.

District. Defendant also services clients who are residents of this District. The unlawful conduct alleged in this Complaint occurred in this District and across the United States.

## PARTIES

7. Edward D. Jones & Co., L.P. is a wholly owned subsidiary of The Jones Financial Companies, L.L.L.P., a limited liability limited partnership headquartered in St. Louis, Missouri. The Firm earned net revenue of approximately $7.6 billion for the fiscal year ended December 31, 2017, and it generated $872 million of income before its allocations to partners.[5]

8. Edward D. Jones & Co., L.P. is registered with the Securities and Exchange Commission as a broker-dealer and is a member organization of the Financial Industry Regulatory Authority ("FINRA"). As part of its brokerage, investment advisory and financial and wealth planning services, Edward Jones employs over 16,000 registered brokers, or FAs, across the United States.

9. Plaintiff Wayne Bland ("Bland") is an African American who was employed as an Edward Jones Financial Advisor from November 2014 until March 2016. Throughout his tenure, and pursuant to Defendant's pattern or practice of discrimination and company-wide discriminatory policies, Bland was denied resources and business opportunities, including lucrative client accounts, favorable offices and territory, sales and administrative support, and inclusion in favorable broker teams and pooled accounts, on account of his race. Bland has been treated worse than similarly situated Edward Jones employees who are not African American. Bland has lost income and otherwise been harmed as a result of Defendant's unlawful conduct.

---

[5] The Jones Financial Companies, L.L.L.P., 10-K Report for fiscal year ended December 31, 2017 at 28.

**FACTUAL ALLEGATIONS**

10. Edward Jones maintains stereotypical views about the skills, abilities and potential of African Americans that infect and form the basis of the centralized policies and practices challenged by this lawsuit. Because of these stereotypical views, African Americans are significantly under-represented among Edward Jones FAs, approximately 94% of whom are white. Although the financial services industry has made some strides in improving the representation of minorities in the workforce, Edward Jones lags well behind the national average. In a 2015 Forbes interview, company Chief Executive Officer (CEO) Jim Weddle reported that just 6% of Edward Jones FAs were diverse (including Latino, Asian and African-American).[6] This is well below the Census Bureau's reported 21% minority representation for financial advisors nationally.[7] Edward Jones's 6% representation for all minorities even lags behind the nationwide representation of 8.1% for African American advisors alone.

11. Edward Jones maintains centralized control over its wealth management business from its company headquarters, where an almost exclusively white team of senior executives issues company policies that apply to all FAs. Edward Jones compensates its FAs pursuant to uniform, nationwide compensation plans issued every year. The Firm's FAs are compensated based on commissions earned from client transactions. While not an absolute rule, the greater the value of assets managed by an FA, the greater the FA's potential commissions and earnings. As FAs achieve greater financial success, they can advance along the compensation model allowing for greater payout. Pursuant to Edward Jones's Practice Management Model, FAs are evaluated, ranked, and compared to their counterparts across the country based on commissions earned. Accordingly, a level playing field and a fair distribution of resources and business

---

[6] http://www.forbes.com/sites/danschawbel/2015/03/29/jim-weddle-recruiting-the-next-generation-of-financial-advisors/2/#9f38a9450f2b
[7] http://www.investmentnews.com/article/20151214/FEATURE/151209979/a-diversity-problem.

4

opportunities are essential. Unfortunately, Defendant's uniform, Firm-wide policies and practices regarding training, teaming, and the assignment of offices, territories, client accounts and other lucrative business opportunities, and administrative and sales support favor non-African American FAs and result in significant racial disparities in compensation and attrition. These policies and practices are not justified by business necessity but have a disparate impact on African Americans.

12. The disparities in resources and business opportunities begin during a structured, Firm-wide training program for all new FA hires at Edward Jones ("Training Program"). The Training Program is supposed to provide FAs an equal start, but it disadvantages African American FAs from the beginning of their Edward Jones careers.

13. The Firm assigns new FAs to one of two paths: as a stand-alone FA working from home, or by being assigned to a "Legacy" or "Goodknight" partnership and office. FAs who are not provided the opportunity to join a Legacy or Goodknight partnership receive minimal support from the Firm and must begin their career at Edward Jones without a dedicated office, assistance from a Branch Office Administrator, or mentorship from an established FA. FAs assigned to the Legacy program receive dedicated office space, client assistance from a Branch Office Administrator, and mentoring from an established FA. The Firm provides FAs assigned to the Goodknight program office space, mentorship, and an agreement with an established FA to share assets. The dedicated support the Firm provides to the Legacy and Goodknight programs allows those FAs to attract more clients and accounts than stand-alone FAs. These accounts and clients in turn lead to higher compensation and substantially higher success rates at the Firm. For example, the Firm claims that FAs in Goodknight partnerships have an 80% chance of success, a rate double that of new FAs who are not given such opportunity. However, as a result

of racial stereotypes and discrimination, African American FAs are disproportionately excluded from the Legacy and Goodknight programs, to their distinct disadvantage under Defendant's policies. To the extent they gain admission to these programs, they do not receive the same support or resources. These disadvantages compound as the FA's career progresses.

14. Edward Jones's territory and office assignment policies and practices harm African Americans. The Firm disproportionately relegates African American FAs to territories and offices in less lucrative locations with less investable income and that are less productive for the FA. The Firm also reserves territories with greater investment opportunities for non-African American FAs in order to race-match its FAs to the neighborhood demographics.

15. Edward Jones maintains policies and practices that disproportionately steer lucrative business opportunities, including client accounts, to FAs who are not African American. Pursuant to company policies and practices, the Firm distributes books of business, in whole or in part, when FAs move offices or leave the Firm. The Firm assigns larger and more lucrative books of business and offices to FAs who are not African American. As a result, African American FAs lose compensation and advancement opportunities.

16. The Retirement Transition Plan similarly harms African American FAs by denying them access to the most lucrative client accounts, those of retiring FAs. Under Firm policies, retiring FAs are encouraged to select and team with other FAs at the Firm to distribute their books of business upon retirement. Edward Jones allows a retiring FA to transition his or her clients to other FAs, with Firm approval, over a period during which the receiving FA meets the retiring FA's clients. Under these policies and practices, retiring FAs overwhelmingly select white FAs to inherit their books of business. African American FAs are not selected for these

6

lucrative teams, and are shut out of large client account transfers. Adding further harm, African American FAs are then forced to compete with the FAs who inherit these books of business.

17. In sum, Defendant has and is engaged in an ongoing nationwide pattern and practice of race discrimination and knowingly employs company-wide policies and practices that have a disparate impact on African Americans. Defendant's systemic discrimination against African Americans includes, but is not limited to, the following practices:

a) failing to hire African American FAs and employing discriminatory hiring policies and practices;

b) employing discriminatory training policies and practices;

c) employing discriminatory policies and practices regarding the Goodknight and Legacy programs;

d) employing discriminatory policies and practices regarding the assignment of offices and territory;

e) employing discriminatory policies and practices regarding the transfer and assignment of client accounts, leads, referrals, and other business opportunities;

f) employing discriminatory policies and practices regarding teaming, partnerships, and pooling;

g) employing discriminatory compensation and training cost policies and practices;

h) employing discriminatory policies and practices regarding job assignments, advancement, and promotion;

i) employing policies and practices regarding the assignment of administrative and sales support and other resources and business opportunities that favor whites and harm African Americans;

j) employing discriminatory policies and practices regarding the Firm's Retirement Transition Plan;

k) employing policies and practices that disproportionately disadvantage African American FAs and/or that reinforce, amplify, and continue past discrimination or customer bias;

l) failing to apply and enforce Edward Jones policies in a consistent, race neutral fashion, to the detriment of African American FAs;

m) retaliating against African Americans who complain of discrimination;

n) employing policies and practices that have a disparate impact against African Americans; and

o) terminating African Americans on account of race and/or due to diminished performance and/or production that was lower than it would have been, but for the unlawful conduct of Edward Jones.

18. The intentional and disparate impact discrimination described above is ongoing and constitutes a continuing violation of the civil rights laws. The racially discriminatory policies and practices at Edward Jones are uniform and national in scope. Class members relying on Plaintiffs to protect their rights work or worked at Edward Jones offices across the country and were harmed by these same policies and practices.

Plaintiff Was Subjected To and Harmed By Defendants' Unlawful Conduct

19. Plaintiff Wayne Bland joined Edward Jones in 2014 after working in the financial services industry for over a decade. Despite his experience, Edward Jones denied Bland business opportunities and resources regularly given to white FAs at the Firm.

20. After obtaining his licenses, Bland asked to prospect in an affluent and predominantly white neighborhood. Pursuant to its racial steering practices, Edward Jones refused Bland's request and instead assigned a white FA with less experience to prospect in the affluent neighborhood. The Firm assigned Bland to prospect in a lower-income neighborhood with a large African American population. Bland later learned that the Firm knew this assigned territory was not economically viable or capable of sustaining a successful financial advisory business, as the Firm had closed an office there for that reason.

21. Bland was denied the opportunity to join a Goodknight partnership, which would have allowed an established FA at Edward Jones to transfer assets and mentor him. Bland was also denied a Legacy partnership and forced to work from his home for a substantial period of time, further hampering his ability to attract clients because he lacked the trappings and legitimacy of a professional office. In contrast, non-African American FAs were placed on Goodknight and Legacy partnerships and were given office space upon hire.

22. After five months of working from his home and repeatedly requesting access to an office or inclusion in the Legacy or Goodknight programs, the Firm finally allowed Bland access to an office in Lake Wylie. This occurred only because Bland negotiated directly with the senior FA at that office. However, Bland's office was a storage room filled with a dining table, boxes and office supplies. When the senior FA who managed the Lake Wylie office left the Firm, Edward Jones assigned the office and the departing FA's tens of millions of dollars in client accounts to a white FA who had begun the Training Program months after Bland and lacked his financial services experience.

23. Throughout Bland's tenure, he was also denied administrative and sales support, as well as valuable client accounts and books of business, which the Firm assigned instead to white FAs, including newly hired, junior white FAs.

24. Although the Firm took little or no interest in Bland's career or professional development, it assigned him the unpaid role of "Diversity Inclusion Specialist" for his region. In this role, Bland saw firsthand the Firm's empty lip-service to diversity and its abysmal commitment to equal employment opportunities. After being the target of racially hostile statements, Bland engaged in protected activity by reporting this misconduct to management, to no avail; worse, the Firm targeted him for retaliation and further discrimination.

25. Plaintiff, like other African American FAs, suffered substantial harm as a result of Defendant's unlawful policies and practices. Among other things, Plaintiff was denied membership in and benefits of favorable teaming relationships due to his race. Although many FAs departed or retired from Plaintiff's region and regions in which other African American FAs worked, Plaintiff and others similarly situated were denied valuable client account transfers and distributions. Additionally, Defendant's policies and practices regarding the assignment of territories and resources hindered Plaintiff and others similarly situated from developing successful businesses and earning income by denying them access to lucrative territories, proper support, resources, and business opportunities.

26. Plaintiff and others similarly situated lost wages and other benefits, and suffered emotional distress, other nonpecuniary losses, and irreparable injury to their careers as a result of Edward Jones's conduct. Defendant's actions have caused and continue to cause Plaintiff and others similarly situated substantial losses in earnings, management opportunities, and other employment benefits, in an amount to be determined by a jury.

**CLASS ALLEGATIONS**

27. Plaintiff brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of African Americans who work or worked for Defendant as Financial Advisors or Financial Advisor Trainees and who were subjected to discrimination by Defendant due to their race. All requirements of class certification are met by the proposed class.

28. The class of African American employees and former employees is so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1).

29. There are questions of law and fact common to the class, and those questions can and should be resolved in a single proceeding that furthers this litigation. Fed. R. Civ. P. 23(a)(2).

30. The claims alleged by Plaintiff are typical of the claims of the class members. Fed. R. Civ. P. 23(a)(3).

31. Plaintiff will fairly and adequately represent and protect the interests of the class. Fed. R. Civ. P. 23(a)(4).

32. The issues of determining liability and equitable relief, among other issues are appropriate for issue certification under Rule 23(c)(4), as are other common issues.

33. The proposed class also meets the requirements for certification under Rule 23(b)(2) and Rule 23(b)(3). The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

## COUNT I

### RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. SECTION 1981

34. Plaintiff, on behalf of himself and those similarly situated, realleges paragraphs 1 through 33 and incorporates them by reference as though fully stated herein as part of Count I of this Complaint.

35. Section 1977 of the Revised Statutes, 42 U.S.C. § 1981, as amended, guarantees persons of all races the same right to make and enforce contracts, regardless of race. The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

36. Defendant maintained a nationwide set of uniform, discriminatory employment practices and engaged in a pattern or practice of systemic race discrimination against African Americans that constitutes illegal intentional race discrimination in violation of 42 U.S.C. §1981.

### PRAYER FOR RELIEF

WHEREFORE, on behalf of himself and the class he seeks to represent, Plaintiff respectfully requests that this Court find against Defendant as follows:

a. Certify this case as a class action;

b. Designate Plaintiff as Class Representative and designate Plaintiff's counsel of record as Class Counsel;

c. Declare that Defendant's acts, conduct, policies and practices are unlawful and violate 42 U.S.C. Section 1981;

d. Declare that Edward Jones engages in a pattern and practice of racial discrimination against African Americans and employs policies and practices that have an unlawful disparate impact on African Americans;

e. Order Edward Jones to reform it discriminatory policies and practices;

f. Order Plaintiff and all others similarly situated reinstated to their appropriate positions, promotions, and seniority, and otherwise make Plaintiff whole;

g. Award Plaintiff and all others similarly situated the value of all compensation and benefits lost and that they will lose in the future as a result of Edward Jones's unlawful conduct;

h. Award Plaintiff and all others similarly situated compensatory and punitive damages;

i. Award Plaintiff and all others similarly situated prejudgment interest and attorneys' fees, costs, and disbursements, as provided by law;

j. Award Plaintiff and all others similarly situated such other make whole equitable, injunctive and legal relief as this Court deems just and proper to end the discrimination and fairly compensate Plaintiff;

k. Award Plaintiff and all others similarly situated such other relief as this Court deems just and proper.

## **DEMAND FOR A JURY TRIAL**

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

        Respectfully submitted on behalf of Plaintiff and those similarly situated,

        STOWELL & FRIEDMAN LTD.

        By: */s/ Linda D. Friedman*

Linda D. Friedman
Suzanne E. Bish
George S. Robot
STOWELL & FRIEDMAN LTD.
303 W. Madison Street
Suite 2600
Chicago, Illinois  60606
(312) 431-0888