**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| WAYNE BLAND and<br>FELICIA SLATON-YOUNG, on behalf of<br>themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EDWARD D. JONES & CO., L.P., and THE<br>JONES FINANCIAL COMPANIES, L.L.L.P.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Civil No. 18-cv-03673<br><br>Honorable Andrea Wood<br>Magistrate Judge Young B. Kim |

## ANSWER

Pursuant to Rule 12 of the Federal Rules of Civil Procedure, this Court's Local Rules, and the Standing Order Regarding Mandatory Initial Discovery Pilot Project (the "Standing Order"), Defendants Edward D. Jones & Co., L.P. ("Edward Jones") and The Jones Financial Companies L.L.L.P ("Jones Financial" together with Edward Jones, the "Defendants"), by and through their undersigned counsel, hereby answer the Amended Complaint (Doc. 9) (the "Amended Complaint") filed by Plaintiffs Wayne Bland and Felicia Slaton-Young (each, a "Plaintiff" and together "Plaintiffs").

Unless hereinafter specifically admitted, Defendants deny each and every allegation of the Amended Complaint, and further deny that Plaintiffs are entitled to the relief sought therein. Defendants further respectfully submit that the headings, sub-headings, footnotes, and any unnumbered paragraphs in the Amended Complaint do not require a response but, for the avoidance of doubt, such allegations are denied. Defendants respond to the allegations of the Amended Complaint as follows:

1. Edward Jones claims to be a leader in the financial services industry and to serve "nearly 7 million investors from more offices than any other investment firm in America." As of year-end 2017, Edward Jones managed over $1 trillion in client assets and employed over 16,000 registered brokers, called Financial Advisors ("FAs"), to service largely individual investors in more than 13,000 locations across the United States.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 1 of the Amended Complaint, except admit that Edward Jones is a leader in the financial services industry. Defendants further admit that as of December 31, 2017, Edward Jones had approximately $1.1 trillion in assets under care, and employed more than 16,000 financial advisors in more than 13,000 locations throughout the United States and Canada. To the extent this paragraph purports to quote, describe, or summarize the contents of websites, the actual text of such websites speaks for itself and Defendants deny any allegations inconsistent therewith.

2. African Americans are under-represented both as FAs[3] and in management at Edwards Jones, and are paid substantially less than their counterparts who are not African American. These disparities result from the Firm's systemic, intentional race discrimination and policies and practices that serve no reasonable business purpose yet have a disparate impact on African Americans.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 2.

3. Plaintiffs, and the class they seek to represent, allege that Edward Jones employs discriminatory company-wide policies and practices regarding training, compensation, partnerships, and the assignment of territories, sales support, and business opportunities. These discriminatory practices unlawfully segregate the Firm's workforce and deny African Americans income and advancement opportunities because of their race.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 3 of the Amended Complaint, except admit that Plaintiffs seek to represent a class of individuals and the Amended Complaint purports to assert various race-related claims.

4. Plaintiffs have filed this lawsuit to hold Edward Jones accountable for its unlawful treatment of African Americans and to achieve meaningful reform. This lawsuit is brought by Plaintiffs on behalf of themselves and other African American FAs who work or worked for the Firm and have been harmed by its

2

company-wide pattern or practice of race discrimination and discriminatory policies and practices. This action seeks class-wide injunctive relief and an end to Edward Jones's discriminatory practices.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 4 of the Amended Complaint,

except to deny having knowledge sufficient to form a belief about the truth of the allegations

concerning Plaintiffs' reasons for filing this lawsuit. Defendants further admit that Plaintiffs

purport to assert this lawsuit on behalf of themselves and others and that the Amended

Complaint purports to seek class-wide injunctive relief.

5. Plaintiffs' claims arise under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.

**ANSWER:** Paragraph 5 of the Amended Complaint contains conclusions of law to which no

response is required. To the extent a response is required, Defendants admit this Court has

subject matter jurisdiction over this action and otherwise deny the allegations set forth in

paragraph 5.

6. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b). Defendant is licensed to do business and maintains a number of branch offices in this District. Defendant also services clients who are residents of this District. Throughout her tenure at Edward Jones, Plaintiff Slaton-Young resided in, worked for, and was harmed by Edward Jones in this District. The unlawful conduct alleged in this Complaint occurred in this District and across the United States.

**ANSWER:** Paragraph 6 of the Amended Complaint contains conclusions of law to which no response is required. To the extent a response is required, Defendants deny that venue is proper in this District. Defendants further admit that Edward Jones does business in this District, Edward Jones maintains branch offices in this District, that Plaintiff Slaton-Young was employed by Edward Jones in this District, and that Edward Jones has customers that reside in this District. Except as expressly admitted, the Defendants deny the allegations in Paragraph 6.

7. Edward D. Jones & Co., L.P. is a wholly owned subsidiary of The Jones Financial Companies, L.L.L.P., a limited liability limited partnership headquartered in St. Louis, Missouri. The Firm earned net revenue of approximately $7.5 billion for the fiscal year ended December 31, 2017, and it generated $872 million of income

before its allocations to partners.

**ANSWER:** Defendants admit that that Edward D. Jones & Co., L.P. is a wholly owned

subsidiary of The Jones Financial Companies, L.L.L.P. and that The Jones Financial Companies,

L.L.L.P. is a limited liability limited partnership headquartered in St. Louis, Missouri.

Defendants further admit that for the year ending December 31, 2017, they earned net revenue of

approximately $7,506,000,000 and generated approximately $872,000,000 in total income before

allocations to partners.  To the extent this paragraph purports to quote, describe, or summarize

the contents of such documents or websites, the actual text of such documents or websites speaks

for itself and Defendants deny any allegations inconsistent therewith.

8.     Edward D. Jones & Co., L.P. is registered with the Securities and Exchange
       Commission as a broker-dealer and is a member organization of the Financial
       Industry Regulatory Authority ("FINRA"). As part of its brokerage, investment
       advisory, and financial and wealth planning services, Edward Jones employs over
       16,000 registered brokers, or FAs, across the United States.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 8 of the Amended Complaint,

except admit that Edward D. Jones & Co., L.P., is registered with the U.S. Securities and

Exchange Commission and is a member of the Financial Industry Regulatory Authority.

Defendants further admit that as of December 31, 2017, Edward D. Jones & Co., L.P. employed

over 16,000 financial advisors in the United States and Canada.

9.     Plaintiff Wayne Bland ("Bland") is African American and was employed as an
       Edward Jones Financial Advisor in North Carolina and South Carolina from
       approximately November 2014 until he was constructively discharged in March
       2016.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 9 of the Amended Complaint,

except admit that Bland is African-American and was employed as an Edward Jones financial

advisor in North Carolina and South Carolina from approximately October 2014 until he

voluntarily resigned in March 2016.

10. Plaintiff Felicia Slaton-Young ("Slaton-Young") is African American and was employed as an Edward Jones Financial Advisor in Chicago, Illinois from approximately June 2013 until she was constructively discharged in December 2017.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 10 of the Amended

Complaint, except admit that Slaton-Young is African-American and was employed as an

Edward Jones financial advisor in Chicago, Illinois from approximately June 2013 until she

voluntarily resigned in December 2017.

11. Edward Jones maintains stereotypical views about the skills, abilities and potential of African American employees and clients that infect and form the basis of the centralized policies and practices challenged by this lawsuit. Because of the Firm's stereotypical views and discriminatory employment practices, African Americans are significantly underrepresented among Edward Jones FAs, approximately 94% of whom are white. In a 2015 Forbes interview, company Chief Executive Officer (CEO) Jim Weddle reported that just 6% of Edward Jones FAs were diverse (including Latino, Asian and African-American). This is well below the U.S. Census Bureau's reported 21% minority representation for financial advisors nationally. Edward Jones's 6% representation for all minorities even lags behind the nationwide representation of 8.1% for African American advisors alone.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 11 of the Amended

Complaint. To the extent this paragraph purports to quote, describe, or summarize the contents

of documents, interviews, or websites, the actual text of such documents, interviews, or websites

speaks for itself and Defendants deny any allegations inconsistent therewith.

12. Edward Jones maintains centralized control over its wealth management business from its company headquarters, where an almost exclusively white team of senior executives issues company policies that apply to all FAs. Edward Jones compensates its FAs pursuant to uniform, nationwide compensation plans. The Firm's FAs are compensated based on commissions earned from client accounts and transactions. While not an absolute rule, the greater the value of assets managed by an FA, the greater the FA's potential commissions and earnings. As FAs achieve greater financial success, they can advance along the compensation model allowing for greater payout and bonuses. Unfortunately, Defendant's uniform, Firm-wide policies and practices (including those regarding training, partnerships, and the assignment of offices, territories, client accounts and other lucrative business opportunities, and administrative and sales support) favor non-African American FAs and result in significant racial disparities in compensation

and attrition. These policies and practices are not justified by business necessity but have a disparate impact on African Americans.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 12 of the Amended Complaint, except admit that FAs earn compensation based in part on commissions generated from client accounts.

13. The disparities in resources and business opportunities begin during a structured, Firm-wide training program for all new FA hires at Edward Jones ("Training Program"). The Training Program is supposed to provide FAs an equal start, but it disadvantages African American FAs from the beginning of their Edward Jones careers.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 13 of the Amended Complaint.

14. The Firm assigns new FAs to one of two paths: as a stand-alone FA working from home, or by being assigned to a "Legacy" or "Goodknight" partnership and office. FAs who are not provided the opportunity to join a Legacy or Goodknight partnership receive minimal support from the Firm and must begin their careers at Edward Jones without a dedicated office, assistance from a Branch Office Administrator ("BOA"), or mentorship from an established FA. FAs assigned to the Legacy program receive dedicated office space, client assistance from a BOA, and mentoring from an established FA. The Firm provides FAs assigned to the Goodknight program office space, mentorship, and an agreement with an established FA to share assets. The dedicated support the Firm provides to the Legacy and Goodknight programs allows those FAs to attract more clients and accounts than stand-alone FAs. These accounts and clients in turn lead to higher compensation and higher success rates at the Firm. For example, the Firm claims that FAs in Goodknight partnerships have an 80% chance of success, a rate double that of new FAs whom the Firm does not give such opportunities. However, as a result of racial stereotypes and discrimination, African American FAs are disproportionately excluded from the Legacy and Goodknight programs, to their distinct disadvantage under Defendant's policies. To the limited extent African Americans gain admission to these programs, they do not receive the same support, resources, or business opportunities as non-African Americans. These disadvantages compound as the FAs careers progress.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 14 of the Amended Complaint.

15. The Firm's territory and office assignment policies and practices harm African

Americans. The Firm disproportionately relegates African American FAs to territories and offices in less lucrative locations with clients and prospects with less investable income, that are less productive for the FA. The Firm also impermissibly relies on race and color in assigning territories and often steers FAs by race to match the neighborhood demographics. The Firm reserves territories with greater investment opportunities for non-African American FAs.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 15 of the Amended

Complaint.

16.     Edward Jones maintains policies and practices that disproportionately steer lucrative business opportunities, including client accounts, to FAs who are not African American. Pursuant to company policies and practices, the Firm assigns client accounts and distributes books of business, in whole or in part, when FAs move offices or leave the Firm. The Firm assigns larger and more lucrative clients, books of business and offices to FAs who are not African American. As a result, African American FAs lose compensation and advancement opportunities.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 16 of the Amended

Complaint.

17.     The Firm's Retirement Transition Plan similarly harms African American FAs by denying them access to the most lucrative client accounts, those of retiring FAs. Under Firm policies, retiring FAs are encouraged to select and team with other FAs at the Firm to distribute their books of business upon retirement. Edward Jones allows a retiring FA to transition his or her clients to other FAs, with Firm approval, over a period during which the receiving FA meets the retiring FA's clients. Under these policies and practices, retiring FAs overwhelmingly select white FAs to inherit their books of business. African American FAs are not selected for these lucrative teams and are shut out of large client account transfers.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 17 of the Amended

Complaint, except admit that certain retiring FAs transition their clients to other Edward Jones

FAs over certain periods of time.

18.     Edward Jones also employs management grooming and assignment practices that disadvantage African Americans. White FAs are mentored and assigned titles and jobs that lead to career advancement, while African Americans are denied such opportunities and are largely excluded from management opportunities and promotions.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 18 of the Amended

Complaint.

19.     In sum, Defendant has and is engaged in an ongoing nationwide pattern and practice of race discrimination and knowingly employs company-wide policies and practices that have a disparate impact on African Americans. Defendant's systemic discrimination against African Americans includes, but is not limited to, the following practices:

a) failing to hire African American FAs and employing discriminatory recruitment and hiring policies and practices;

b) employing discriminatory training policies and practices;

c) employing discriminatory policies and practices regarding the Goodknight and Legacy programs;

d) employing discriminatory policies and practices regarding the assignment of offices and territory;

e) employing discriminatory policies and practices regarding the transfer and assignment of client accounts, leads, referrals, and other business opportunities;

f) employing discriminatory policies and practices regarding teaming, partnerships, and pooling;

g) employing discriminatory compensation policies and practices;

h) employing discriminatory policies and practices with regard to training and so-called "training costs";

i) employing discriminatory policies and practices regarding job assignments, titles, advancement, and promotion;

j) employing policies and practices regarding the assignment of administrative and sales support and other resources and business opportunities that favor whites and harm African Americans;

k) employing discriminatory policies and practices regarding the Firm's Retirement Transition Plan;

l) employing policies and practices that disproportionately disadvantage African American FAs and/or that reinforce, amplify, and continue past discrimination or customer bias;

m) failing to apply and enforce Edward Jones policies in a consistent, race neutral fashion, to the detriment of African American FAs;

n) retaliating against African Americans who complain of discrimination;

o) employing policies and practices that have a disparate impact against African Americans; and

p) terminating African Americans on account of race and/or due to diminished performance and/or production that was lower than it would have been, but for the unlawful conduct of Edward Jones.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 19 of the Amended

Complaint, including all subparts of Paragraph 19.

20. The intentional and disparate impact discrimination described above is ongoing and constitutes a continuing violation of the civil rights laws. The racially discriminatory policies and practices at Edward Jones are uniform and national in scope. Class members relying on Plaintiffs to protect their rights work or worked for Edward Jones across the country and were harmed by these same policies and practices.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 20 of the Amended

Complaint.

21. Throughout their tenure, and pursuant to Defendant's pattern or practice of discrimination and company-wide discriminatory policies, Bland and Slaton-Young were denied resources and business opportunities, including lucrative client accounts, favorable offices and territories, sales and administrative support, inclusion in favorable broker partnerships or teams and pooled accounts, leads, titles, referrals, and other business and advancement opportunities, because of their race. Bland and Slaton-Young were treated worse than similarly situated Edward Jones employees who are not African American, and they lost income and otherwise were harmed as a result of Defendant's unlawful conduct.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 21 of the Amended

Complaint.

22. Plaintiff Wayne Bland joined Edward Jones in 2014 after working in the financial services industry for over a decade. Despite his experience, Edward Jones denied Bland business opportunities and resources regularly given to white FAs at the Firm.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 22 of the Amended

Complaint, except admit that Bland began employment with Edward Jones in 2014.

23. After obtaining his licenses, Bland asked to prospect in an affluent and predominantly white neighborhood. Pursuant to its racial steering practices, Edward Jones refused Bland's request and instead assigned a white FA with less experience to prospect in the affluent neighborhood Bland requested. The Firm assigned Bland to prospect in a lower-income neighborhood with a large African

American population. Bland later learned that the Firm knew this assigned territory was not economically viable or capable of sustaining a successful financial advisory business, as the Firm had previously closed an office there for that reason.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 23 of the Amended

Complaint.

24. Bland was denied the opportunity to join a Goodknight partnership, which would have allowed an established FA at Edward Jones to transfer assets and mentor him. Bland was also initially denied a Legacy partnership and forced to work from his home for a substantial period of time, further hampering his ability to attract clients because he lacked the trappings and legitimacy of a professional office. In contrast, Bland observed that Edward Jones routinely placed non-African American FAs on favorable Goodknight and Legacy partnerships and gave them office space upon hire.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 24 of the Amended

Complaint.

25. After five months of working from his home and repeatedly requesting access to an office or inclusion in the Legacy or Goodknight programs, the Firm finally allowed Bland access to an office in Lake Wylie. This occurred only because Bland negotiated directly with the senior FA at that office. However, Bland's office was a storage room filled with a dining table, boxes, and office supplies. Worse, Bland was denied the mentorship, monthly meetings, training and other tangible benefits provided to non-African American Legacy FAs.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 25 of the Amended

Complaint, except admit that Bland received a Legacy program placement at an Edward Jones's

financial advisor's office in Lake Wylie, South Carolina.

26. When the senior FA who managed the Lake Wylie office left the Firm, Edward Jones assigned the office and the departing FA's tens of millions of dollars in client accounts to a white FA who had begun the Training Program months after Bland and lacked his financial services experience.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 26 of the Amended

Complaint, except admit that a white FA hired just months after Bland assumed responsibility

for the management of the branch in Lake Wylie and certain of its accounts in February 2016, at

which time Bland was participating in a performance improvement plan.

27.    Throughout Bland's tenure, he was also denied administrative and sales support, as well as valuable client accounts and books of business, which the Firm assigned instead to white FAs, including newly hired, junior white FAs.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 27 of the Amended

Complaint.

28.    Although the Firm took little or no interest in Bland's career or professional development, it assigned him the unpaid role of "Diversity Inclusion Specialist" for his region. In this role, Bland saw firsthand the Firm's empty lip-service to diversity and its abysmal commitment to equal employment opportunities. After being the target of racially hostile statements, Bland engaged in protected activity by reporting this misconduct to management, to no avail; worse, the Firm targeted him for retaliation and further discrimination.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 28 of the Amended

Complaint, except admit that Bland chose to serve as a Diversity Inclusion Specialist in his

region.

29.    After informing Edward Jones of racial harassment and being repeatedly denied business opportunities, resources and support, Bland was targeted by management and subjected to enhanced and differential scrutiny, then forced to leave the Firm in 2016.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 29 of the Amended

Complaint.

30.    Plaintiff Felicia Slaton-Young joined Edward Jones in 2013. Slaton-Young was well poised to succeed, armed with prior financial services experience, her Series 6 and 63 licenses, and a Master's degree in Business Administration. Despite her qualifications, Edward Jones denied Slaton-Young business opportunities and resources regularly given to white FAs at the Firm.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 30 of the Amended

Complaint, except admit that Slaton-Young began employment with Edward Jones in 2013 and

Slaton-Young possessed Series 6 and 63 qualifications and a Master of Business Administration degree when she began her employment.

31. Throughout her tenure, Slaton-Young was denied inclusion in lucrative Legacy or Goodknight programs. In fact, Slaton-Young was not even aware that such programs existed until well into her tenure, when she inquired after overhearing white FAs discussing the accounts they had recently received through the Legacy and/or Goodknight programs.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 31 of the Amended Complaint, except deny having knowledge sufficient to form a belief about the truth of the allegations concerning Slaton-Young's knowledge of the Legacy or Goodknight programs or her purported inquiries into such programs.

32. Instead, after obtaining her Series 7 and 66 licenses, Edward Jones placed Slaton-Young in an office already slated for closure. Pursuant to the Firm's racial steering practices, the Firm assigned her to a location in Chicago's predominantly African American south side. This territory was not economically viable or capable of sustaining a successful financial advisory business, as the Firm was well aware. After a turnover of approximately five FAs over two years, the few clients that remained in the office when Slaton-Young arrived were disgruntled and unhappy with Edward Jones.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 32 of the Amended Complaint.

33. Edward Jones soon moved Slaton-Young to a new location on the south side of Chicago, as part of what it called a pilot program to place two or more FAs in a single location. The other FA selected was also African American, and the two appeared to be "test subjects" selected due to their race. The pilot was launched in a neighborhood with a high African American population and very limited investment or client potential; the territory could not sustain two FAs. The arrangement had no tangible benefit for Slaton-Young; she and the other FA shared office space, but Edward Jones did not allow them to team or pool accounts or clients.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 33 of the Amended Complaint, except admit that Slaton-Young relocated to a multi-FA branch location in Chicago,

Illinois with another African American FA while employed as an Edward Jones financial advisor.

34.     Having been denied business opportunities, partnerships, resources and support because of her race and pursuant to the Firm's discriminatory employment practices, Slaton-Young had no choice but to leave the Firm in late 2017.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 34 of the Amended

Complaint, except admit that Slaton-Young ended her employment with Edward Jones in 2017.

35.     Plaintiffs, like other African American FAs, suffered substantial harm as a result of Defendant's unlawful policies and practices. Among other things, Plaintiffs were denied membership in and benefits of favorable teaming relationships due to their race. Although many FAs departed or retired from Plaintiffs' regions, Plaintiffs and others similarly situated were denied valuable client account transfers and distributions. Additionally, Defendant's policies and practices regarding the assignment of territories and resources hindered Plaintiffs and others similarly situated from developing successful businesses and earning income by denying them access to lucrative territories, proper support, resources, and business opportunities.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 35 of the Amended

Complaint.

36.     Plaintiffs and others similarly situated lost wages and other benefits, and suffered emotional distress, other nonpecuniary losses, and irreparable injury to their careers as a result of Edward Jones's conduct. Defendant's actions have caused and continue to cause Plaintiffs and others similarly situated substantial losses in earnings, management opportunities, and other employment benefits, in an amount to be determined by a jury.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 36 of the Amended

Complaint.

37.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of African Americans who work or worked for Defendant as Financial Advisors, including Financial Advisor Trainees, and who were subjected to discrimination by Defendant due to their race. All requirements of class certification are met by the proposed class.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 37 of the Amended

Complaint, except admit that Plaintiffs purport to bring this action pursuant to Rule 23 of the

Federal Rules of Civil Procedure.

38.    The class of African American employees and former employees is so numerous
       that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1).

**ANSWER:** Paragraph 38 of the Amended Complaint contains conclusions of law to which no

response is required.  To the extent a response is required, Defendants deny the allegations set

forth in Paragraph 38.

39.    There are questions of law and fact common to the class, and those questions can and
       should be resolved in a single proceeding that furthers this litigation. Fed. R. Civ. P.
       23(a)(2).

**ANSWER:** Paragraph 39 of the Amended Complaint contains conclusions of law to which no

response is required.  To the extent a response is required, Defendants deny the allegations set

forth in Paragraph 39.

40.    The claims alleged by Plaintiffs are typical of the claims of the class members.
       Fed. R. Civ. P. 23(a)(3).

**ANSWER:** Paragraph 40 of the Amended Complaint contains conclusions of law to which no

response is required.  To the extent a response is required, Defendants deny the allegations set

forth in Paragraph 40.

41.    Plaintiffs will fairly and adequately represent and protect the interests of the class.
       Fed. R. Civ. P. 23(a)(4).

**ANSWER:** Paragraph 41 of the Amended Complaint contains conclusions of law to which no

response is required.  To the extent a response is required, Defendants deny the allegations set

forth in Paragraph 41.

42.    The issues of determining liability and equitable relief, among other issues are
       appropriate for issue certification under Rule 23(c)(4), as are other common
       issues.

**ANSWER:** Paragraph 42 of the Amended Complaint contains conclusions of law to which no

response is required.  To the extent a response is required, Defendants deny the allegations set

forth in Paragraph 42.

43. The proposed class also meets the requirements for certification under Rule 23(b)(2) and Rule 23(b)(3). The questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

**ANSWER:** Paragraph 43 of the Amended Complaint contains conclusions of law to which no

response is required.  To the extent a response is required, Defendants deny the allegations set

forth in Paragraph 43.

## COUNT I

44. Plaintiffs, on behalf of themselves and those similarly situated, reallege paragraphs 1 through 43 and incorporate them by reference as though fully stated herein as part of Count I of this Complaint.

**ANSWER:** Defendants restate and incorporate herein by reference the responses contained in

paragraphs 1-43 of their Answer.

45. Section 1977 of the Revised Statutes, 42 U.S.C. § 1981, as amended, guarantees persons of all races the same right to make and enforce contracts, regardless of race. The term "make and enforce" contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

**ANSWER:** Paragraph 45 of the Amended Complaint contains conclusions of law to which no

response is required.  To the extent a response is required, Defendants refer the Court to the

referenced portion of 42 U.S.C. § 1981 for a complete account of its contents.  To the extent this

paragraph purports to quote, describe, or summarize the contents of such statute, the actual text

of such statute speaks for itself and Defendants deny any allegations inconsistent therewith.

46. Defendant maintained firm-wide discriminatory employment practices and engaged in a pattern or practice of systemic race discrimination against African Americans that constitutes illegal intentional race discrimination in violation of 42 U.S.C. § 1981.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 46 of the Amended

Complaint.

## COUNT II

47.    Plaintiff Bland, on behalf of himself and those similarly situated, realleges the
       above paragraphs and incorporates them by reference as though fully stated herein
       as part of Count II of this Complaint.

**ANSWER:** Defendants restate and incorporate herein by reference the responses contained in

paragraphs 1-46 of their Answer.

48.    Plaintiff Bland filed a charge of race discrimination with the Equal Employment
       Opportunity Commission and received a Notice of Right to Sue. Defendant was
       placed on notice of the representative allegations contained in this Complaint
       through Bland's EEOC charge. Bland brings this suit within 90 days of receipt of
       such notice.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 48, except admit that Bland

filed a charge of race discrimination with the Equal Employment Opportunity Commission but

deny that the Equal Employment Opportunity Commission issued him a "Notice of Right to

Sue."

49.    Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful for an
       employer to discriminate against any individual in the terms, conditions, or
       privileges of employment on the basis of race, or to limit, segregate, or classify its
       employees or applicants for employment in any way which deprives or tends to
       deprive any individual of employment opportunities or otherwise adversely affect
       his or her status as an employee on the basis of race.

**ANSWER:** Paragraph 49 of the Amended Complaint contains conclusions of law to which no

response is required.  To the extent a response is required, Defendants refer the Court to Title VII

of the Civil Rights Act of 1964 for a complete account of its contents.

50.    By its conduct as alleged herein, Defendant unlawfully discriminated against
       Bland and those similarly situated in violation of Title VII, under both disparate
       treatment and disparate impact theories of liability.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 50 of the Amended

Complaint.

## COUNT III

51.     Plaintiff Bland, individually, incorporates all allegations above as though fully
        stated herein.

**ANSWER:** Defendants restate and incorporate herein by reference the responses contained in

paragraphs 1-50 of their Answer.

52.     Plaintiff Bland engaged in protected activity by complaining to management of
        his unlawful treatment.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 52 of the Amended

Complaint.

53.     Plaintiff Bland suffered retaliation and materially adverse action because of his
        protected activity, in violation of 42 U.S.C. § 2000e-3(a).

**ANSWER:** Defendants deny the allegations set forth in Paragraph 53 of the Amended

Complaint.

## COUNT IV

54.     Plaintiff Bland, individually, incorporates all allegations above as though fully
        stated herein.

**ANSWER:** Defendants restate and incorporate herein by reference the responses contained in

paragraphs 1-53 of their Answer.

55.     Plaintiff Bland engaged in protected activity by complaining to management of
        his unlawful treatment due to his race.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 55 of the Amended

Complaint.

56.     Plaintiff Bland suffered retaliation and materially adverse action because of his
        protected activity, in violation of 42 U.S.C. § 1981.

**ANSWER:** Defendants deny the allegations set forth in Paragraph 56 of the Amended Complaint.

<b><u>AFFIRMATIVE AND OTHER DEFENSES</u></b>

As separate defenses to the Amended Complaint, and without conceding that Defendants bear the burden of proof or persuasion as to any of them, Defendants assert the following defenses on the basis that they will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. Defendants reserve the right to amend this Answer and to assert additional defenses and/or to supplement, alter, or change their Answer and Affirmative Defenses upon completion of appropriate investigation and discovery.

<b><u>FIRST DEFENSE</u></b>

Plaintiffs' Amended Complaint, in whole or in part, fails to state a claim upon which relief may be granted because it is conclusory and Plaintiffs have not alleged sufficient facts to render plausible some or all of the claims they assert in the Amended Complaint.

<b><u>SECOND DEFENSE</u></b>

Plaintiffs' claims, and/or the claims of the members of the putative class they seek to represent, are barred in whole or in part, or alternatively, any recovery must be reduced or offset, because Plaintiffs and/or the members of the putative class they seek to represent failed to mitigate any and all losses claimed by them.

<b><u>THIRD DEFENSE</u></b>

Counts III and IV of the Amended Complaint fail to state a claim upon which relief may be granted because Plaintiff Bland did not engage in protected activity.

<b><u>FOURTH DEFENSE</u></b>

Counts III and IV of the Amended Complaint fail to state a claim upon which relief may

18

be granted because even if Plaintiff Bland is found to have engaged in a protected activity, he cannot establish a causal connection between such protected activity and a retaliatory or materially adverse employment action.

## FIFTH DEFENSE

Plaintiffs' claims are barred in whole or in part because even if it were determined that Defendants impermissibly considered Plaintiffs' race or any other unlawful factor in any employment actions with respect to Plaintiffs (which Defendants deny), Defendants nevertheless would have taken the same action in the absence of the impermissible motive(s).

## SIXTH DEFENSE

To the extent Plaintiffs' claims, and/or the claims of the members of the putative class they seek to represent, seek relief for (a) alleged incidents occurring prior to the applicable limitations period for the filing of an administrative charge with the Equal Employment Commission or a state deferral agency; or (b) for alleged incidents of discrimination, harassment or retaliation not listed in Plaintiff Bland's charge, such claims are barred as being outside the scope of Plaintiff Bland's administrative charge.

## SEVENTH DEFENSE

Plaintiffs' claims, and/or the claims of the members of the putative class they seek to represent, are barred in whole or in part, or alternatively, any recovery must be reduced or offset, because to the extent Plaintiffs and/or the members of the putative class they seek to represent suffered any of the alleged damages, such damages were caused or contributed to by Plaintiffs' own actions or the actions of others over whom Defendants exercised no control.

## EIGHTH DEFENSE

Plaintiffs' claims, and/or the claims of the members of the putative class they seek to represent, are barred in whole or in part by the equitable doctrines of waiver, laches, unclean hands, or estoppel through their own conduct.

## NINTH DEFENSE

Plaintiffs' damages claims, and/or the damages claims of the members of the putative class they seek to represent, are barred in whole or in part to the extent such damages claimed are speculative in nature.

## TENTH DEFENSE

Plaintiff Bland's Title VII claims, and/or the claims of the members of the putative class he seeks to represent, are barred to the extent Plaintiff Bland failed to exhaust his administrative remedies to comply with the procedural prerequisites for bringing a civil cause of action against Defendants under Title VII.

## ELEVENTH DEFENSE

Plaintiffs' claims, and/or the claims of the members of the putative class they seek to represent, are barred in whole or in part by the applicable statutes of limitations, statutes of repose, or by other limitations imposed by law.

## TWELFTH DEFENSE

Plaintiffs' claims, and/or the claims of the members of the putative class they seek to represent, are barred in whole or in part because Defendants acted reasonably and in good faith at all times material herein, based on all relevant facts and circumstances known by Defendants at the time they so acted.

**THIRTEENTH DEFENSE**

Any losses alleged by Plaintiffs were not caused by any fault, act, omission, or breach by Defendants, but were caused by circumstances, entities, or persons, including Plaintiffs, and/or the members of the putative class they seek to represent, for which Defendants are not responsible and cannot be held liable.

**FOURTEENTH DEFENSE**

Plaintiffs' claims, and/or the claims of the members of the putative class they seek to represent, are barred to the extent Plaintiffs failed to identify and specify any specific employment practices that are allegedly responsible for any observed statistical disparities.

**FIFTEENTH DEFENSE**

Plaintiffs' claims, and/or the claims of the members of the putative class they seek to represent, are barred in whole or in part because all actions by Defendants with regard to Plaintiffs, if any, were lawful and were made in good faith compliance with applicable provisions of law, rules, and regulations.

**SIXTEENTH DEFENSE**

Plaintiffs' claims, and/or the claims of the members of the putative class they seek to represent, are barred in whole or in part because all actions by Defendants with regard to Plaintiffs, if any, were based on legitimate, non-discriminatory and non-retaliatory reasons unrelated to Plaintiffs' race or other protected classification or any alleged protected activity.

**SEVENTEENTH DEFENSE**

Defendants have not acted in reckless disregard of the law or engaged in any willful violation of the law; rather, Defendants' actions with respect to Plaintiffs, and/or the members of the putative class they seek to represent, were taken in good faith conformity with administrative

regulations, guidance, and/or interpretations issued by the relevant governmental departments and/or agencies.

## EIGHTEENTH DEFENSE

Plaintiffs' claims, and/or the claims of the members of the putative class they seek to represent, for punitive or liquidated damages are barred because Defendants undertook good faith efforts to comply with anti-discrimination laws by, among other things, making good faith efforts to enforce an anti-discrimination policy and Plaintiffs unreasonably failed to avail themselves of those measures in a timely manner.

## NINETEENTH DEFENSE

The claims of Plaintiffs, and/or the members of the putative class they seek to represent, who have executed a waiver or release of claims against any or all Defendants are barred by that waiver or release of claims.

## TWENTIETH DEFENSE

Plaintiffs' claims, and/or the claims of the members of the putative class they seek to represent, are barred in whole or in part to the extent the seek to impose liability based on claims that Defendants apply differing standards of compensation, or different terms, conditions, or privileges or employment, because any such differences are applied pursuant to a bona fide seniority or merit system, or a system which measures earnings by quantity or quality of production within the meaning of § 703(h) of Title VII, and such differences are not the result of an intention to discriminate because of race or color.

## TWENTY-FIRST DEFENSE

Plaintiffs' claims, and/or the claims of the members of the putative class they seek to represent, are barred in whole or in part because all of Defendants' actions toward Plaintiffs, if

any, were based on bona fide factors other than race. To the extent Plaintiffs can establish a *prima facie* case of discrimination based on disparate impact (which Defendants deny), all of Defendants' employment decisions generally and with respect to Plaintiffs, and the putative class members Plaintiffs seek to represent, individually, were job related and consistent with business necessity.

**TWENTY-SECOND DEFENSE**

Plaintiffs' claims, and/or the claims of the members of the putative class they seek to represent, are barred in whole or in part because any decisions made with respect  to their employment were fully justified based upon Defendants' judgment of differences in individual performance, qualifications, skills, effort, responsibility, merit, or other bona fide occupational qualifications.

**TWENTY-THIRD DEFENSE**

To the extent Defendants discover during the course of this action that Plaintiffs or putative class members engaged in conduct that would have warranted discharge from employment with Defendants, Plaintiffs' right to recovery beyond the date of such conduct is cut off.

**TWENTY-FOURTH DEFENSE**

Plaintiffs' claims, and/or the claims of the members of the putative class they seek to represent, are barred in whole or in part because Defendants did not consider race or any other impermissible factor in their decision to implement is policies and procedures surround office placement, Goodknight programs, or Legacy programs, or in any other policy or procedure that Plaintiffs may be challenging.

### TWENTY-FIFTH DEFENSE

Plaintiffs' claims, and/or the claims of the members of the putative class they seek to represent, brought under § 1981 are barred in whole or in part to the extent they seek redress for claims of disparate impact because disparate impact claims cannot be asserted under § 1981.

### TWENTY-SIXTH DEFENSE

Plaintiffs' claims, and/or the claims of the members of the putative class they seek to represent, are barred in whole or in part because, even if any unlawful discrimination occurred (which Defendants deny) such conduct was prohibited by the applicable policies and was not committed, countenanced, ratified, or approved by higher management in Defendants' organizational structure.

### TWENTY-SEVENTH DEFENSE

Venue is not proper in this District because Plaintiff Bland's Title VII claims do not satisfy the specific venue requirements of 42 U.S.C. § 2000e-5(f)(3) in that the alleged unlawful employment conduct in Plaintiff Bland's Title VII claims did not take place in this District, the employment records relevant to the alleged unlawful employment conduct are not maintained or administered in this District, and Plaintiff Bland never applied to work in this District.

### TWENTY-EIGHTH DEFENSE

To the extent Plaintiff Slaton-Young wishes to pursue her case in this District, her claims are not properly joined with Plaintiff Bland's claims and their claims should be severed.

### TWENTH-NINTH DEFENSE

The claims of Plaintiffs, and/or the members of the putative class they seek to represent, are barred, in whole or in part, by their lack of standing.

## THIRTIETH DEFENSE

The claims of Plaintiffs, and/or the members of the putative class they seek to represent, are barred, in whole or in part, because the purported class definitions are ambiguous and overbroad.

## THIRTY-FIRST DEFENSE

If this Court were to certify this action as a class action, any award of liquidated, multiple, or punitive damages would deny Defendants the due process of law.

## THIRTY-SECOND DEFENSE

Plaintiffs' claims, and/or the claims of the members of the putative class they seek to represent, for injunctive and other equitable relief are barred on grounds that they have an adequate remedy at law.

## THIRTY-THIRD DEFENSE

Plaintiffs are not entitled to certification of this action or any claims alleged therein as a class action because the purported class is not so numerous that joinder of its members is impracticable, questions of law or fact are not common to the class, the claims of Plaintiffs are not typical of the claims or defenses of the purported class, the purported representative Plaintiffs will not fairly and adequately protect the interest of the class, Plaintiffs cannot establish a "common contention" that is capable of classwide resolution, and the requirements of Fed. R. Civ. P. 23(b) are not met in this case.

## THIRTY-FOURTH DEFENSE

Imposition of punitive damages would deprive Defendants of due process of law and equal protection of the law in that the standards for imposition of such damages, by judges or juries, are impermissibly vague and permit multiple liability for allegedly wrongful conduct, all

in violation of Amendments V and XIV to the Constitution of the United States and related provisions of state constitutions.

## THIRTY-FIFTH DEFENSE

Plaintiffs are not entitled to a jury trial on any claims for equitable relief.

## THIRTY-SIXTH DEFENSE

Plaintiff Bland is barred from pursuing his claims in the Northern District of Illinois because venue is improper and the Complaint, and the purported claims that he and Slaton-Young assert therein, should be transferred to the Eastern District of Missouri where venue is appropriate for all Claims.

## ADDITIONAL DEFENSES

Defendants hereby reserve and assert all affirmative and other defenses available under any applicable federal or state law. Defendants presently have insufficient knowledge or information upon which to form a belief as to whether they may have other, as yet unstated, defenses available. Therefore, Defendants reserve the right to assert additional defenses in the event that they would be appropriate.

**WHEREFORE**, Defendants respectfully seek judgment as follows:

A.    That Plaintiffs take nothing by virtue of the Amended Complaint;

B.    That Plaintiffs' claims are dismissed with prejudice;

C.    That Defendants be awarded the costs of defending this action, including reasonable attorneys' fees, costs, and disbursements, and

D.    For such other and further relief as this Court may deem just and proper.

Dated: September 25, 2018                            Respectfully Submitted

**BRESSLER AMERY ROSS, P.C.**                **DOWD BENNETT LLP**

By: /s/ Carole Miller _____        By: /s/ Jennifer S. Kingston _____
Brian F. Amery (*pro hac vice*)             James F. Bennett (*pro hac vice*)
Carole Miller (*pro hac vice*)              Jennifer S. Kingston (*pro hac vice*)
Stuart D. Roberts (*pro hac vice*)          Michelle D. Nasser
2001 Park Place, Suite 1500               7733 Forsyth Blvd., Suite 1900
Birmingham, Alabama 35203              St. Louis, Missouri 63105
(205) 719-0400 (telephone)               (314) 889-7300 (telephone)
(205) 719-0500 (facsimile)                (314) 863-2111 (facsimile)
bamery@bressler.com                     jbennett@dowdbennett.com
cmiller@bressler.com                     jkingston@dowdbennett.com
sroberts@bressler.com                    mnasser@dowdbennett.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of September, 2018 a true and correct copy of the foregoing **ANSWER** was filed via the Court's ECF system effecting service upon the following Counsel of record:

> Linda Debra Friedman
> Suzanne E. Bish
> George S. Robot
> Stowell & Friedman, Ltd.
> 303 W. Madison Street
> Suite 2600
> Chicago, IL 60606
> 312-431-0888
> lfriedman@sfltd.com
> sbish@sfltd.com
> grobot@sfltd.com


> /s/ Jennifer S. Kingston.