IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WAYNE BLAND, FELICIA SLATON-YOUNG, and NYISHA BELL, on behalf of themselves and all others similarly situated, | Case No. 18-cv-3673 |
| Plaintiff, | Hon. Judge Andrea R. Wood |
| v. | |
| EDWARD D. JONES & CO., L.P. | Jury Trial Requested |
| Defendant. | |

**PLAINTIFFS' UNOPPOSED MOTION FOR PROVISIONAL CLASS
CERTIFICATION, PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT,
AND APPROVAL AND DISTRIBUTION OF NOTICE TO CLASS OF SETTLEMENT**

Linda D. Friedman
Suzanne E. Bish
George S. Robot
STOWELL & FRIEDMAN, LTD.
303 W. Madison St., Suite 2600
Chicago, IL 60606
(312) 431-0888
lfriedman@sfltd.com
sbish@sfltd.com
grobot@sfltd.com

*Attorneys for Plaintiffs, on behalf of themselves
and all others similarly situated*

March 19, 2021

Plaintiffs, by and through their attorneys, Stowell & Friedman, Ltd., respectfully submit the parties' proposed class settlement ("Settlement"), which provides a $34 million settlement fund for class members' monetary awards, attorneys' fees, and service awards, and meaningful programmatic relief to increase opportunities for a class of African American and Black Financial Advisors ("African American Advisors") employed by Defendant Edward D. Jones & Co., L.P. ("Edward Jones" or the "Firm"). This Settlement was negotiated at arm's length; is fair, reasonable, and adequate; and satisfies all criteria for preliminary approval under federal law. Accordingly, Plaintiffs move this Court for certification of the class, preliminary approval of the Settlement Agreement, and approval and distribution of notice to the class.

**FACTUAL BACKGROUND AND SUMMARY OF SETTLEMENT TERMS**

**I.    The Litigation**

1.    In June of 2016, Plaintiff Wayne Bland, an African American former Edward Jones financial advisor ("FA"), retained Plaintiffs' counsel to represent him with respect to his claims of race discrimination against the Firm. After extensive investigation, Plaintiff Bland filed the initial complaint (Dkt. 1) in May 2018 alleging class-wide racial discrimination and seeking injunctive and monetary relief for a class of African American Advisors. The lawsuit was later amended the complaint to add individual and class claims under Title VII and to add Plaintiffs Felicia Slaton-Young and Nyisha Bell (Dkts. 9, 33).[1]

2.    The lawsuit alleged that Edward Jones was engaged in a pattern or practice of race discrimination and maintained Firm-wide employment policies with a disparate impact on African American FAs, resulting in racial disparities in compensation and attrition. Specifically, Plaintiffs allege that pursuant to firm-wide practices, African American Advisors were assigned

---

[1] On December 30, 2020, Plaintiffs filed the Third Amended Complaint to add Plaintiff Bell's Title VII and state anti-discrimination claims after she exhausted her administrative remedies. (Dkt. 111.)

1

to less lucrative territories; excluded from teaming opportunities, including the Firm's Goodknight, Retirement Transition Plan ("RTP"), and Legacy programs; denied client account and open office assignments and other business opportunities and resources because of their race.

3. For the first ten months of this litigation, the parties engaged in substantial motion practice regarding the proper venue and the validity of Plaintiffs' legal claims. Edward Jones filed motions to dismiss all of Plaintiffs' claims and to transfer venue to the Eastern District of Missouri, where the Firm is headquartered. After full briefing, oral argument, and supplemental submissions, the Court denied Defendant's motion to dismiss and held that Plaintiff Felicia Slaton-Young properly stated cognizable individual and class claims pursuant to Section 1981 and Title VII, under disparate treatment and disparate impact theories of discrimination, and was properly venued in this District. (Dkts. 104–105.)

4. In November 2018, the parties exchanged mandatory initial disclosures, which set forth the factual and legal bases for their claims and issues in the case, and propounded detailed requests for information under the Mandatory Initial Discovery Pilot ("MIDP") program. The Court stayed discovery while Edward Jones's motions were pending but directed the parties to confer regarding discovery, including regarding electronically stored information ("ESI"), and submit to the Court an agreed or competing discovery protocols. The parties conferred extensively regarding the proper scope of and methodology for discovery, including ESI, exchanging multiple proposals and ultimately submitting competing protocols. Plaintiffs obtained much of the documents and workforce and client account data they sought from the Firm as part of the mediation process, as described below.

5. While the Court was considering Defendant's motions to transfer and/or dismiss, the parties decided to engage in private mediation to determine whether they could settle this

dispute prior to undertaking lengthy class discovery, class certification motion practice, trials on liability and damages, and potential appeals. To perform their due diligence and properly negotiate on behalf of the class, Plaintiffs sought, and Edward Jones agreed to produce, substantial discovery, including documents reflecting and related to the policies and practices challenged by the lawsuit and the employment workforce, human resources, compensation, and client account data necessary to assess their claims and damages.

6. Plaintiffs' counsel retained an expert labor economist to review and analyze the workforce and client account data. Plaintiffs sought and attained additional and supplemental data as necessary. Plaintiffs' expert analyzed the data thoroughly and conducted extensive studies and analyses regrading issues of liability and damages that informed Plaintiffs' mediation positions and negotiations. Plaintiffs' counsel continued to investigate the Firm and its policies and practices, interviewed dozens of class members and studied publicly available information.

7. The parties retained excellent, experienced mediators and engaged in lengthy, arms-length negotiations over the course of more than one year, including four days of formal mediation and several informal sessions. Plaintiffs actively participated in every aspect of the settlement process. Understanding and fulfilling their fiduciary duties to the class, Plaintiffs attended every mediation session; were fully informed of the facts, law, and their expert's data analyses and findings; and had lengthy information sharing and strategy meetings with Plaintiffs' counsel before and after mediation sessions.

8. The parties first engaged the services as a mediator of the Honorable Charles N. Clevert, Jr., a retired former Chief Judge of the United States District Court for the Eastern District of Wisconsin. With Judge Clevert, the parties participated in two consecutive days of mediation in Milwaukee, Wisconsin, during which the parties made lengthy presentations of

their factual and legal arguments, and expert data analysis. After these mediation sessions stalled, the parties retained Michael Russell, another highly experienced professional mediator, who mediated for two additional days with the parties. During these sessions, the parties presented additional factual and legal arguments, and exchanged competing theories and calculations of damages. Mr. Russell also held lengthy individual meetings with the parties prior to and following the mediation to better understand their respective positions. Mr. Russell continued to mediate with the parties through January 2021, and counsel for the parties met directly as well.

9. The parties' efforts culminated in the Settlement Agreement, the product of hard-fought, principled negotiations facilitated and overseen by two well-respected mediators.

## II. Summary of the Settlement Terms

10. The proposed Settlement, attached as Exhibit A, provides substantial monetary relief and valuable and meaningful programmatic relief for class members.

### A. Programmatic Relief

11. As is further specified in the Settlement Agreement, Defendant has agreed to programmatic relief over a three-year period that is designed to enhance opportunities for employment, earnings, and advancement of African American Advisors.

12. Edward Jones will create an FA Advisory Council comprised of a diverse cross-section of Edward Jones FAs, who will meet regularly to identify and address issues of diversity, equity, and inclusion. The FA Advisory Council will convene a focus group of African American Advisors who will meet with Edward Jones leadership to explore and develop ideas and initiatives to increase representation and opportunity for African American Advisors.

13. To arm Edward Jones's senior management with relevant, objective data to identify and address important issues of racial diversity, equity, and inclusion, the Firm's

Inclusion and Diversity department will study, and report to its Enterprise Leadership Team on a regular basis, data regarding African American Advisor representation, hiring and attrition.

14. The Settlement also provides for substantial relief in the form of a revision to the FA employment agreement presented to new FAs.

15. First, Edward Jones has agreed to release in full all obligations for "training costs" (i.e. for payment of alleged costs of FA training up to $75,000) for all FAs whose Edward Jones employment terminated before January 1, 2021 and to not pursue any such training costs against those FAs. Plaintiffs' counsel estimates that the value of this programmatic relief alone to class members is in excess of $20 million.

16. Edward Jones will also revise its FA employment agreement on a going-forward basis to reduce the amount of training costs it seeks to obligate FAs to repay if they leave Edward Jones for a competitor from $75,000 to $50,000.

**B.    The Settlement Fund and Claims Resolution Process**

17. Edward Jones will establish a settlement fund of $34 million to compensate class members, including Plaintiffs; to provide for all attorneys' fees, costs, and service awards to Plaintiffs awarded by the Court; and provide for all costs of administering the Settlement. In addition, Edward Jones will separately pay the employer's share of payroll taxes and withholdings in connection with monetary awards to class members.

18. Based on the claims resolution process, the entire settlement fund will be distributed, and under no circumstance will any of the settlement fund revert to the Defendant.

19. The settlement fund will be distributed using an innovative process that gives class members options to select an expedited payment or an individualized assessment of their claims. In order to receive a monetary award, class members must elect and submit either: (1) a

short claim form to receive an expedited monetary award based on objective factors, such as length of service with Edward Jones and period of employment within the class period, or (2) a longer, more detailed claim form for the opportunity to receive a monetary award based on an individualized assessment of their claims by a special master and/or independent neutrals as part of the Individual Claims Resolution Program ("ICRP"). The special master will oversee the claims resolution process and approve the amount of each monetary award, ensuring fairness and consistency. Plaintiffs' counsel will provide information to the special master regarding the relevant Edward Jones's policies and practices and the factual and legal bases for the lawsuit.

20. Plaintiffs' counsel will assist class members throughout the approval and claims resolution process, answering questions, explaining the claims process and available options, and assisting class members who opt for an individualized assessment complete their claim forms.

## ARGUMENT

### I. The Settlement Class Should Be Provisionally Certified

21. Plaintiffs move to provisionally certify a class of all African American and/or Black field-based Financial Advisors employed by Edward Jones as Financial Advisors in the United States and eligible to serve Edward Jones clients and earn commissions at any time between May 24, 2014 and December 31, 2020.

22. Before assessing whether the settlement is within the range of reasonableness for purposes of preliminary approval, the Court conducts an independent class-certification analysis. The Settlement Class meets all the requirements for certification under Federal Rule of Civil Procedure 23(a) and Rule 23(b)(2) and (b)(3).

### A. The Settlement Class Meets All Requirements of Rule 23(a)

23. The proposed class meets all requirements of Rule 23(a) as "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a).

24. Numerosity is met as the Settlement Class includes at least 800 current and former Edward Jones FAs across the United States, making joinder impracticable. *Mulvania v. Sheriff of Rock Island Cty.*, 850 F.3d 849 (7th Cir. 2017) (40-member class sufficient to meet numerosity); *Healey v. Int'l Bhd. of Elec. Workers, Local Union No. 134*, 296 F.R.D. 587, 593 (N.D. Ill. 2013) (geographic dispersion of class adds to impracticability of joinder).

25. This case presents many common questions of law and fact that meet Rule 23(a)(2), including about whether Edward Jones engaged in a pattern or practice of racial discrimination and whether Edward Jones's policies and practices regarding teaming, the assignment of territory, account distributions, among other practices, had an unlawful disparate impact against African American Advisors. *See McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F.3d 482, 489 (7th Cir. 2012) (whether FA teaming and account distribution policies cause racial discrimination and are justified by business necessity "are issues common to the entire class and therefore appropriate for class-wide determination"); *see also Chicago Teachers Union, Local No. 1 v. Bd of Educ. of City of Chicago*, 797 F.3d 426 (7th Cir. 2015).

26. Plaintiffs' claims are typical of the class claims because Plaintiffs, like the class, are African American or Black, worked as Edward Jones FAs, and allege they were subjected to

7

and harmed by the same discriminatory policies and practices at issue in this litigation. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982).

27. Plaintiffs, as class representatives, will continue to protect the interests of the class fairly and adequately. They have devoted significant time to meeting with Plaintiffs' counsel and participating in the negotiation of this Settlement. Plaintiffs retained experienced counsel, who have regularly been appointed class counsel, including in other discrimination class action lawsuits against other financial services firms. *See, e.g.*, *Senegal v. JPMorgan Chase Bank N.A.*, No. 18-cv-6006 (N.D. Ill. Sept. 12, 2018), ECF No. 18; *Slaughter v. Wells Fargo Advisors, LLC*, No. 13-cv-6368 (N.D. Ill. Jan. 17, 2017), ECF No. 103; *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 05-cv-6583, 2012 WL 5278555, at *1 (N.D. Ill. July 13, 2012); *Cremin v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 328 F. Supp. 2d 865 (N.D. Ill. 2004); *see also Morris v. Risk Mgmt. Alternatives, Inc.*, 203 F.R.D. 336, 344 (N.D. Ill. 2001) (recognizing that counsel who proved adequate in prior cases will likely prove so in future).

**B.     The Settlement Class Meets the Requirements of Rule 23(b)(2) and 23(b)(3)**

28. Certification under Rule 23(b)(2) is warranted because the class alleges that Defendant "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2). Plaintiffs allege that every class member was subject to Firm-wide policies and practices that harmed African American Advisors. The Settlement addresses these allegations and provides programmatic relief designed to increase employment opportunities for the class of African American Advisors as a whole.

29. The class is also properly certified under Rule 23(b)(3). The common factual and legal issues and proof of class-wide liability and damages this case presents are "questions of law

8

or fact common to class members that predominate over any questions affecting individual members," and a class action is therefore "superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3); *see Kleen*, 831 F. 3d at 926–31 (affirming finding of predominance and superiority where plaintiffs demonstrated common method of proving aggregate class-wide damages); *Chicago Teachers Union*, 797 F.3d at 443–45 (Rule 23(b)(2) and 23(b)(3) certification in case for injunctive and monetary relief).

30. The parties' Settlement is relevant to the Rule 23(b)(3) analysis. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619–20 (1997). Any manageability or predominance concerns relating to individual proceedings and defenses are satisfied by the settlement and its claims resolution process. *See Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660 (7th Cir. 2004).

## II. The Settlement Should Be Preliminarily Approved

31. At the preliminary approval stage, courts review class action settlements to determine whether they are "within the range of possible approval." *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982); *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Injury Litig.*, 314 F.R.D. 580, 603 (N.D. Ill. 2016). "[T]he court's task is . . . not to conduct a full-fledged inquiry into whether the settlement meets Rule 23(e)'s standards." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, No. 07-cv-2898, 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011). This Settlement provides outstanding monetary and programmatic relief to class members and is well within the range of possible approval.

### A. This Settlement Provides Meaningful Programmatic Relief and Substantial Monetary Relief to Class Members

32. The Settlement Fund of $34 million provides exceptional monetary relief to the class members harmed by the policies and practices challenged in this litigation. If approved, the Settlement will result in one of the largest employment race discrimination Settlement Funds in

9

recent years.[2] As explained below, the Settlement also provides a process for fair allocation of the settlement fund among class members, and none of the fund will revert to Edward Jones.

33. The Settlement provides programmatic relief of real and immediate value with the elimination of training costs obligations valued in excess of $20 million, the reduction of training costs going forward, and Edward Jones's agreement to take action, over a three-year period, to enhance opportunities for employment, earnings, and advancement of African American FAs.

34. The Settlement includes programs designed to squarely address the lawsuit's allegations of racial disparities in compensation, attrition, and business opportunities and to increase the representation of and opportunities for African American Advisors. Edward Jones will form an Advisory Council of a diverse cross-section of Edward Jones FAs to meet regularly to identify and address issues of racial diversity, equity, and inclusion; convene a focus group of African American Advisors who will meet with Firm leadership to explore and develop initiatives to increase representation and opportunity for African American Advisors; and regularly provide senior leadership with the objective workforce data necessary to devise meaningful reform initiatives and measure their efficacy. Noted experts and a wealth of social science research indicate that these practices are among the most meaningful to increase diversity and address disparities based on race in organizations.[3]

35. The Firm's agreement not to pursue training costs from FAs who left the Firm before January 1, 2021, and to reduce the training cost provision on a going-forward basis from

---

[2] *See, e.g.*, SEYFARTH, *17th Annual Workplace Class Action Litigation Report* at 33–34, https://www.seyfarth.com/dir_docs/publications/WCAR_SAMPLE_2021.pdf (largest employment discrimination settlement in 2020 was $15.5 million); SEYFARTH, *16th Annual Workplace Class Action Litigation Report* at 33–34, http://seyfarth-ebooks.com/Workplace-Class-Action-Litigation-Report-2020/ (largest employment discrimination settlement in 2019 was $24 million).
[3] *See, e.g.*, Frank Dobbin & Alexandra Kalev, *Why Diversity Programs Fail*, HARV. BUS. REV. (July–Aug. 2016), https://hbr.org/2016/07/why-diversity-programs-fail (noting that diversity task forces and councils are among the most effective mechanisms for increasing diversity in companies).

10

$75,000 to $50,000 for current FAs will provide class members with real relief. Most Edward Jones FAs begin their careers in the Firm's training program and must sign an FA employment agreement, which seeks to obligate them to pay Edward Jones up to $75,000 in training costs if they leave the Firm within the first three years of achieving their can-sell status (the point in time when the Firm deemed them eligible to sell securities) and accept other FINRA-licensed employment. Because of the high attrition rate of African American FAs, the training cost obligation disproportionately affect African Americans, many of whom suffered financial harm or were driven from the industry out of fear of the Firm's collection efforts.

36. An analysis of the class data reveals that the value of releasing all training costs obligation of affected class members is at least $20 million. In addition to having this substantial financial obligation lifted, FAs who left the Firm before January 1, 2021, and within three years of their can-sell date, will now be able to work in the industry and use their FINRA licenses without the fear of litigation for an obligation that could often exceeded their Edward Jones earnings. Current Edward Jones FAs will welcome the $25,000 reduction in training costs.

37. Finally, the claims resolution process for distributing the settlement fund provides class members meaningful choices depending on their personal circumstances and needs during this challenging period in our country's history. Unlike most other settlements, monetary awards to class members will not be computed solely by formula. Instead, class members may elect to (a) file a simple claim form and receive an expedited payment based on objective factors, or (b) file a detailed claim form and participate in a more nuanced and detailed process through which class members may receive an individualized assessment of their claims, including consideration of post-employment financial loss and any emotional distress suffered.

38. The Settlement's claims resolution process will be monitored by an experienced, well-qualified special master, Professor Lynn P. Cohn, Director of the Center on Negotiation and Mediation at the Northwestern School of Law, who has been appointed in a similar capacity by other courts in this District. Professor Cohn will review and assess the claim forms and make final awards, ensuring fairness and consistency. In order to ensure the best-informed decisions, Plaintiffs' counsel will provide training for Professor Cohn and any independent, qualified neutrals who assist her regarding Edward Jones's employment practices and the class claims.

39. Plaintiffs' counsel will also assist and provide support for class members throughout the settlement and claims resolution process by answering questions, advising them of their rights and options, and helping them complete and submit claim forms.

### B. The Settlement Is an Outstanding Result for the Class in Light of the Risks of Proceeding Through Trial and Appeal

40. Absent this Settlement, continued litigation of this action would be complex and lengthy, requiring the investment of considerable resources by both sides and the Court. The appropriateness of class certification and liability in this case is hotly contested, and both sides would face considerable risks should the litigation proceed. In contrast to the complexity, delay, risk, and expense of continuing litigation, the proposed Settlement will produce prompt, certain, and substantial recovery for class members. Considering the complicated, uncertain, and lengthy litigation facing class members, a Settlement that provides the above programmatic and monetary relief is plainly in the best interests of the class.

41. Prior to or at the preliminary approval hearing, Plaintiffs will provide information about the range of potential litigated outcomes for *in camera* review. This is based on human resources and compensation data about individual Edward Jones FAs that is protected by a confidentiality agreement. The approach of Plaintiffs' consulting expert was to consider

12

compensation and attrition disparities by race in light of census data to estimate mitigation. In light of the potential outcomes and risks, this Settlement is an outstanding result that will provide significant monetary relief available to each and every class member who elects to participate even though some class members may not have prevailed in their individual claims in court or would have been subject to a counterclaim for training costs.[4] Edward Jones reserves the right to share its own position on the range of litigated outcomes and/or the risks that might attend full litigation for the Court's *in camera* consideration in connection.

    **C.**    **The Settlement Is Supported by Competent, Experienced Counsel and Is the Product of Arm's Length, Informed Negotiations.**

42.    Based on its experience and an in-depth analysis of the merits, record, and risks of this action, Plaintiffs' counsel enthusiastically recommends this Settlement to the Court for approval. The terms of the Settlement were reached after a full exchange of informal discovery and extensive negotiations with the assistance of two experienced mediators. The settlement negotiations were protracted and difficult and occurred during multiple mediation sessions and subsequent negotiations over a one-year period. Plaintiffs attended and participated fully in all mediation sessions, along with their counsel. The Settlement is the non-collusive product of litigation and mediation. These factors weigh heavily in favor of approving the Settlement.

    **D.**    **The Proposed Service Awards and Attorneys' Fees Are Reasonable**

43.    Plaintiffs' counsel is proud to have advocated for the class alongside Plaintiffs and will petition the Court to award service awards to compensate Plaintiffs for their

---

[4] *See, e.g.*, Hon. Denny Chin, *Summary Judgment in Employment Discrimination Case: A Judge's Perspective*, 57 N.Y.L SCH. L. REV. 671, 673 (2012–2013) (summary judgment is granted, in whole or in part, in employment discrimination cases approximately 77% percent of the time); *accord* Memorandum from Joe Cecil & George Cort, Fed. Judicial Ctr., to Judge Baylson, (Aug. 13, 2008), available at https://www.uscourts.gov/sites/default/files/sujulrs2.pdf (in employment discrimination cases in federal court, summary judgment motions by defendants are more common, more likely to be granted, and more likely to terminate the litigation than other case types).

13

considerable efforts on behalf of the class. The $150,000 service awards are comparable to similar awards granted by courts in similar cases to class representatives who made substantial investments of time and effort and achieved outstanding results for the classes of employees they represented. *See, e.g.*, *McReynolds v. Merrill Lynch*, No. 05-cv-6583 (N.D. Ill. Dec. 6, 2013), ECF No. 616 at 5 (17 class representatives awarded service awards of $250,000 each); *Senegal v. JPMorgan Chase Bank N.A.*, No. 18-cv-6006 (N.D. Ill. Dec. 20, 2018), ECF No. 40 at 5 (6 class representatives each awarded $150,000); *Slaughter v. Wells Fargo*, No. 13-cv-6368, 2017 WL 3128802, at *3 (N.D. Ill. May 4, 2017) ($175,000 each to 6 class representatives); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (approving $300,000 incentive awards). Plaintiffs' counsel will file a separate motion in support of Plaintiffs' service awards.

44. The Settlement also provides for Plaintiffs' counsel to petition the Court for reasonable attorneys' fees in an amount no greater than 25% of the settlement fund. This is considerably lower than the 33⅓% contingency rate fee agreements negotiated and entered into by Plaintiffs. The Seventh Circuit has held that market rate is the best evidence of a reasonable and fair attorney fee. *See Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 957 (7th Cir. 2013); *Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998). A fee of 25% of the settlement fund is reasonable and well within the range of attorneys' fee awards in cases involving comparable risks and litigation costs. *Silverman*, 739 F.3d at 958 (affirming 27.5% fee award of $200 million settlement fund); *Gaskill*, 160 F.3d at 362–63 (approving 38% fee in securities class settlement); *Slaughter*, 2017 WL 3128802, at *3, 24 (approving 25% fee in similar race discrimination class settlement); *Mansfield v. Airline Pilots Ass'n Int'l*, No. 06-cv-6869 (N.D. Ill. Dec. 14, 2009), ECF No. 373 at ¶¶ 17–18 (awarding 35% of $44 million discrimination class settlement); *Smith v. Nike Retail Servs.*, Inc., No. 03-cv-9110 (N.D. Ill. Oct. 1 & 2, 2007), ECF No. 184 at 9 n.2,

187 at ¶ 10 (awarding 32.37% of $7.6 million discrimination class settlement). Plaintiffs' counsel will submit a separate fee petition with the motion for final approval, along with a request for reimbursement of litigation costs advanced on behalf of the class.

### III.   The Proposed Class Notices Are Appropriate

45.    The proposed notices will provide clear and adequate notice so that each class member can make an informed choice about whether to opt out, object, and/or file a timely claim to seek a monetary award. FED R. CIV. P. 23(e). Notice of the Settlement will be sent to class members identified in Edward Jones's workforce data as African American and/or Black Advisors during the class period (Ex. 2 to Ex. A), and a similar notice will be sent to potential class members who self-identified to Edward Jones as being of "Two or More Races (not Hispanic or Latino)" (Ex. 3 to Ex. A).

46.    The proposed class notices are clear, accurate, and satisfy due process. Each notice provides a summary of the terms of the Settlement, including the proposed claims resolution process for monetary awards. The notices also inform class members how and when to file objections and describes the procedures for opting out and submitting a claim, and provides sufficient time to give class members a fair opportunity to respond.

### CONCLUSION

For all the foregoing reasons, the parties respectfully request that the Court enter the Order attached as Exhibit B: (1) certifying a settlement class; (2) preliminarily approving the proposed class action settlement; (3) appointing Plaintiffs' counsel and the class representatives; (4) approving and directing distribution to the class of notice of the settlement; and (5) setting a schedule for the final approval process.

Dated: March 19, 2021

                                                                                            Respectfully submitted,
                                                                                            **STOWELL & FRIEDMAN, LTD.**

                                                                          By:   */s/ Suzanne E. Bish*
                                                                                     Suzanne E. Bish

Linda D. Friedman
Suzanne E. Bish
George S. Robot
303 W. Madison St., Ste. 2600
Chicago, IL 60606
Telephone: (312) 431-0888
lfriedman@sfltd.com
sbish@sfltd.com
grobot@slftd.com